**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MARK AUSSIEKER,** individually and on behalf of all others similarly situated, | Case No. 2:26-cv-00100 |
| *Plaintiff*, | **CLASS ACTION** |
| | **JURY TRIAL DEMANDED** |
| *v.* | |
| **EVERLAW, INC.** | |
| *Defendant.* | |

**FIRST AMENDED CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiff Mark Aussieker ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant EverLaw, Inc. ("Defendant") and alleges as follows:

1.      Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry

stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*...This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.      Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Defendant violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent, by making telemarketing calls without the accurate provision of Caller ID Name (CNAM), as well as calling people who had previously asked to no longer receive calls.

## PARTIES

4.      Plaintiff Mark Aussieker is an individual.

5.      Defendant EverLaw, Inc, is a California Corporation which is registered to do business in Pennsylvania, with its registered agent office address in Allegheny County, which lies within this District.

## JURISDICTION AND VENUE

6.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

7.      The Court has general personal jurisdiction over Defendant because it has registered to do business in Pennsylvania, thereby consenting to the exercise of general personal jurisdiction in Pennsylvania.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant has its registered office in Pittsburgh and therefore "resides" in this judicial District.

## BACKGROUND

**A.      The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.**

9.      The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

10.      The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

11.      A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

12.      The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.     The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.**

13.     The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

14.     The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

15.     A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

## FACTUAL ALLEGATIONS

16.     The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17.     At no point did the Plaintiff consent to receiving telemarketing calls or text messages from the Defendants prior to receiving the calls at issue.

18.     Plaintiff's telephone number, (916) XXX-XXXX is a residential, non-commercial cellular telephone number.

19.     Plaintiff uses the number for personal, residential, and household reasons.

20.     The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

21.     Moreover, the cellular telephone line is assigned to a cellular service which is presumptively residential and was eligible for registration on the National Do Not Call Registry at the time it was registered.

22.     Plaintiff's number has been listed on the Do Not Call Registry since he registered it there on June 28th, 2003.

23. Despite that, Plaintiff received at least 2 calls from Defendant on December 18, 2025 and January 9, 2026.

24. The calls both came from the Caller ID 916-963-9736.

25. The first call the Plaintiff received was on December 18, 2025 at 10:27 AM. It was Defendant's sales representative calling to see if someone named "Star" was interested in purchasing the Defendant's electronic discovery services.

26. The Plaintiff was very confused, since he is not a lawyer and does not have any such need for electronic discovery services.

27. Despite this fact, Defendant called the Plaintiff again on January 9, 2026 at 10:55 AM trying to sell the Plaintiff the same thing and again looking for "Star."

28. Thereafter, the Plaintiff sent an email to Defendant to inquire as to why he received the aforementioned illegal calls to his number on the Do Not Call Registry.

29. Plaintiff did not provide prior express consent to receive these telephone solicitations on Plaintiff's telephone number, had no preexisting business relationship with any caller at the time of the initial calls,. The calls nevertheless continued thereafter.

30. In fact, the Plaintiff is not "Star."

31. Each call described above was a telephone solicitation placed to sell electronic discovery products and services. The calls were not for emergency purposes.

32. The calls all came from the following number 916-963-9736. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendant's calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of that dip is as follows:

| Number | CNAM Available? | CNAM Result | Carrier |
|---|---|---|---|
| 9169639736 | Y | FAIR OAKS CA | Onvoy |

33.     As the aforementioned chart shows, the CNAM transmitted by the Defendant's ultimate telephone carrier, Onvoy, provided CNAM functionality, but the CNAM functionality transmitted a geographic location, and not the Defendant's name or telemarketer's name.

34.     Onvoy provides its customers and downstream service providers the ability to set the CNAM result accurately to reflect their own name as desired, but if the customer does not elect such a CNAM, their default CNAM customer setting is to transmit the geographic location of the telephone exchange for the calling telephone number, and not the caller's name, as occurred here.

35.     It is not possible to call the number back to lodge a Do Not Call request during regular business hours.

36.     Indeed, the Plaintiff did so verify by calling the number and receiving an intercept message and simply being disconnected.

37.     The number does not play any messages, recordings, or other information telling callers how to opt out of receiving calls.

38.     As such, the caller ID information transmitted along with the calls did not transmit a telephone number that permits "any individual to make a do-not-call request during regular business hours."

39.     The Plaintiff did not consent to telemarketing calls from the Defendant.

40.     The Plaintiff never did business with the Defendant.

41.     The calls were not necessitated by an emergency.

42.     The calls were unwanted.

43.     The calls were nonconsensual encounters.

6

44. Plaintiff's privacy has been repeatedly violated by the above-described telemarketing calls.

45. Plaintiff never provided his consent or requested the calls.

46. Plaintiff and the Classes have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

47. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

48. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

**National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from Defendant, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendant sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) which either (a) did not transmit a CPN or ANI at all or (b) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business hours, (4) within the four years prior to the filing of the Complaint.

49. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and

7

individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of their agents.

50.     **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant's telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

51.     **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendant has no defenses unique to Plaintiff.

52.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

   a.  Whether Defendant obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

   b.  whether Defendant transmitted CPN or ANI and its name in the caller ID information, when provided as an option by their telephone carrier, to Plaintiff and members of the Telemarketing Caller ID Class;

   c.  whether the CPN or ANI was transmitted at all, and, if so, whether such CPN or ANI would permit an individual to make an internal do not call request during regular business hours;

d.  Whether Defendant established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations; and

e.  Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

53.  **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  There are hundreds of Class members in each class, such that joinder of all members is impracticable.

54.  In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

a.  The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

b.  The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

9

c.       Defendant acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

d.       Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## <u>COUNT I</u>
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the National DNC Class)**

55.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

56.     It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

57.     Defendant violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

58.     These violations were willful or knowing.

59.     As a result of Defendant's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

60.     Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

10

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Telemarketing Caller ID Class)**

61.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

62.     It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

63.     It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

64.     Defendant violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without proving a CPN or ANI that allowed any individual to make a do-not-call request during regular business hours, and without the provision of accurate caller ID name.

65.     These violations were willful or knowing.

66.     As a result of Defendant's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

67.     Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully request that the Court enter judgment against Defendant for:

A.  Certification of the Classes as alleged herein;

B.  Appointment of Plaintiff as representative of the Classes;

C.  Appointment of the undersigned as counsel for the Classes;

D.  Damages to Plaintiff and members of the Classes pursuant to 47 U.S.C. § 227(c)(5);

E.  Injunctive relief for Plaintiff and members of the Class, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendants from making calls to numbers listed on the National Do Not Call Registry, or while failing to transmit the caller ID information required by law;

F.  Attorneys' fees and costs, as permitted by law; and

G.  Such other or further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 10th day of April, 2026.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
(*Pro Hac Vice*)
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

Lead Attorney for Plaintiff and the Proposed Class

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2026, a copy of the foregoing was served via CM/ECF, which will electronically serve all counsel of record who have appeared.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com
> Lead Attorney for Plaintiff and the Proposed Class

13