**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MARK AUSSIEKER,** individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> *v.* <br><br> **EVERLAW, INC.** <br><br> *Defendant.* | Case No. 2:26-cv-00100 <br> **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant moves to partially dismiss the Plaintiff's complaint on two theories, arguing that there is no private right of action for the TCPA's caller ID regulations, and arguing that the Plaintiff fails to plead sufficient facts for the imposition of treble damages. None of these arguments has merit, and both should fail. First, the private right of action for Caller ID violations is well-established. Every federal court to have considered the question after the landmark ruling in *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373 (E.D. Mich. 2025), and *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571 (E.D. Pa. 2025), has held that a private right of action exists. Second, the Plaintiff pleads sufficient facts giving rise to treble damages, and the Court should not dismiss such claims at a premature stage as here.

**Background**

Plaintiff Mark Aussieker is an individual who maintains a residential cellular telephone line, which he uses for personal, residential, and household purposes. Plaintiff's number has been on the National Do Not Call Registry on June 28, 2003, more than twenty-two years before the conduct at issue. Plaintiff has no preexisting business relationship with Defendant, never

provided Defendant with consent to send the calls, and is not "Star," the individual whom Defendant's calls purported to seek.

Despite Plaintiff's longstanding DNC registration, Defendant placed at least two telemarketing calls to Plaintiff's residential cellular line, the first on December 18, 2025, in which the Plaintiff indicated that he was confused, and the second on January 9, 2026, more than three weeks later. Both calls were placed from the same number, 916-963-9736, by Defendant's sales representative attempting to sell Defendant's electronic discovery products and services. Plaintiff is not an attorney and has no need for such services. The caller ID information transmitted with each call did not identify Defendant or any telemarketer acting on its behalf. Defendant's carrier, Onvoy, makes CNAM (Caller ID Name) functionality available and allows its customers to set the transmitted CNAM result to reflect their actual name, but Defendant did not exercise that option. Instead, Defendant left in place Onvoy's default setting, which transmits only a geographic location. The number from which the calls were placed cannot be called back during regular business hours to lodge a do not call request, either.

**Legal Standard**

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim

2

to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

**Argument**

### A.    There is a private right of action for Plaintiff's caller ID claim.

In contending that there exists no private right of action for the caller ID regulations codified at 47 C.F.R. § 64.1601(e), Defendant fails to address the weight of new authority calling into question the principal authority on which it relies, *Worsham*. It also urges this Court to ignore the precedent that this Court's sister has set in the Eastern District, explicitly holding that there does exist a private right of action for such claims. *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 575 (E.D. Pa. 2025). *Newell* was not decided in a vacuum; it itself was heavily based upon the Eastern District of Michigan's recent holding in *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 375 (E.D. Mich. 2025).

In *Selectquote*, the Eastern District of Michigan undertook a comprehensive analysis of the genesis of the private right of action for caller ID claims under 47 C.F.R. § 64.1601(e). *Selectquote*, 773 F. Supp. 3d at 375. *Selectquote* represents the most comprehensive analysis of Section 1601(e) undertaken by a Court to date, and its reasoning was adopted in full by the *Newell* Court. Since *Selectquote*, *every single court* to consider a Section 64.1601(e) caller ID claim has held that there is a private right of action for violations thereof, including in the District of Oregon, where the Court held as wrongly decided a previous opinion holding that there was no private right of action. *Newell*, 791 F. Supp. 3d 571; *Dobronski v. CHW Grp., Inc.*, No. 24-CV-11649, 2025 WL 2426370, at *8 (E.D. Mich. Aug. 21, 2025), *motion to certify appeal denied*, No. 24-CV-11649, 2025 WL 3068732 (E.D. Mich. Nov. 3, 2025); *Dobronski v. Juliasangel Mktg., LLC*, No. 2:24-CV-12379-TGB-APP, 2025 WL 2659265, at *11 (E.D. Mich. Sept. 17, 2025); *Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL

3

2880136, at *5 (W.D. Wash. Oct. 9, 2025); *Dobronski v. Daraujo*, No. CV 25-10169, 2025 WL 3908484, at *8 (E.D. Mich. Dec. 1, 2025), *report and recommendation adopted*, No. 25-10169, 2025 WL 3708891 (E.D. Mich. Dec. 22, 2025); *Barton v. Am. Fam. Life Assurance Co. of Columbus*, No. 3:25-CV-05671-TMC, 2026 WL 25742, at *5 (W.D. Wash. Jan. 5, 2026); *Weingrad v. DaBella Exteriors, LLC*, No. 3:25-CV-396-SI, 2026 WL 496609, at *6 (D. Or. Feb. 23, 2026); *Novia v. Mobiz, Inc.*, No. 25-CV-11036-AK, 2026 WL 770036, at *7 (D. Mass. Mar. 18, 2026); *Novia v. Mobiz, Inc.*, No. 25-CV-11036-AK, 2026 WL 752181, at *4 (D. Mass. Mar. 17, 2026); *Carr v. Humana Inc.*, No. 3:25-cv-00476-DJH, ECF No. 28 (W.D. Ky. Mar. 23, 2026); *Dobronski v. Uppleger*, No. 25-10168, 2026 WL 905121, at *10 (E.D. Mich. Mar. 31, 2026).

*Selectquote* and its progeny have thoroughly addressed and rejected the reasoning adopted by the citations relied on by Defendant, including *Worsham*, and the other *Dobronski* cases. This Court should continue to adopt the same reasoning embraced *every other* Federal Court to have addressed the issue post-*Selectquote.* To see why the Defendant's authorities got it wrong, and to understand the trend of courts holding that it is right to hold that Section 1601(e) has a private right of action, one must consider its genesis. As the *Newell* Court explained:

> In my view, *Worsham* misunderstands the structure of the statute. In § 227(c), Congress explicitly delegated to the FCC the authority to evaluate different methods and procedures to protect privacy rights – including network technologies – and issue appropriate regulations. If § 64.1601(e) is promulgated as a "method or procedure" to "protect residential telephone subscribers' privacy rights," it fits under § 227(c) and a private cause of action exists. And the administrative record establishes that the FCC viewed caller ID as a "network technology" that Congress *required* the FCC to evaluate as a method and procedure to protect consumer privacy under § 227(c). Thus, caller ID fits into § 227(c), even if (c) does not mandate that the FCC adopt technological methods and authorizes non-technological methods and procedures as well. *See also Dobronski*, 773 F.Supp.3d 373 (concluding, on a motion for reconsideration, that § 64.1601(e) was promulgated under § 227(c), and rejecting *Worsham*'s technology-focused arguments).

Further, § 227(d) only applies to telemarketing made using specific technologies – fax machines, automatic telephone dialing systems, and artificial and prerecorded voice messages – whereas § 64.1601(e) applies to a broader range of telemarketing calls, including traditional manually dialed telemarketing calls. The Third Circuit has cautioned that "our starting point [in regulatory interpretation] is to attempt reconciliation of seemingly discordant statutes and regulations." *LaVallee Northside Civic Ass'n v. Virgin Islands Coastal Zone Mgmt. Comm'n*, 866 F.2d 616, 623 (3d Cir. 1989). It is difficult to discern how § 64.1601(e) could have been lawfully promulgated under § 227(d) without exceeding the FCC's delegated authority. Section 64.1601(e) thus fits best under § 227(c), not (d).

*Worsham* does not grapple with these issues, but attempts instead to have § 64.1601(e) straddle two sections of the statute, an outcome for which I can discern no legal authority. The regulation fits comfortably within § 227(c), which supports the existence of a private right of action.

*Newell*, 791 F. Supp. 3d at 579. The issue with all the authorities Defendant cites, including *Worsham*, is that they did not consider under which section of the TCPA the subject regulation, 47 C.F.R. § 64.1601(e), was promulgated, nor did they reach their conclusion independently. Instead of tussling with the statute and analyzing it, as in *Selectquote* and its progeny, each of the authorities Defendant cites simply rested on persuasive authority from other courts which themselves relied on faulty and underdeveloped reasoning and did not engage in extensive analysis as to the precise genesis of this right of action, which is 47 U.S.C. § 227(c). Defendant's authorities largely reflect a kind of jurisprudential echo chamber, with courts repeating inherited conclusions rooted in underdeveloped, faulty reasoning that federal courts only first started to begin to correct after *Selectquote*. As best Plaintiff can discern, *Selectquote* was the first court to engage in such analysis, which the *Newell* and subsequent courts credited.

As a codified federal regulation dealing with "telemarketing," and with explicit references to the definitions promulgated under the TCPA in 1991 in 47 C.F.R. § 64.1200(f)(13), this particular regulation must have been promulgated under *some* part of the TCPA. "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited

to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208

(1988). In this regard, only a handful of subsections of the TCPA allow for the promulgation of

regulations:

> • § 227(b)(2) authorizes the FCC to implement requirements that relate to the use of prerecorded voices and automatic telephone dialing systems;
> • § 227(c) authorizes the FCC to promulgate rules relating to the "need to protect residential telephone subscribers' privacy rights";
> • § 227(d)(1)–(3) allow regulations relating to technical and procedural standards related to fax machines, automatic telephone dialing systems, and "systems that are used to transmit any artificial or prerecorded voice message";
> • § 227(e)(3) provides for regulations relating to misleading or inaccurate caller ID; and
> • § 227(i) allows for the FCC to promulgate regulations to streamline information sharing with the FCC related to violations

*Selectquote*, 773 F. Supp. 3d at 376. As the Court observed in *Dobronski*, all but § 227(c) are

quickly eliminated as not even remotely applicable to the statutory provision here. The statutory

provision at issue here could not have been promulgated pursuant to Section 227(d), because that

Section relates only to fax machines and automatic telephone dialing systems, not to

telemarketing calls in general, just as Section 227(b), which is inapplicable for identical reasons.

Section 227(e)(3), though it deals with Caller ID, was enacted *after* § 64.1601(e), so that's out.

And, finally, the transmission of accurate caller ID name has nothing to do with information

sharing with the FCC relating to violations contained in Section 227(i). *Id.*

Both the decisions in *Newell* and *Selectquote* are supported by the legislative history

under which the instant subsection was enacted. The subject regulation here, 47 C.F.R. §

64.1601(e), was promulgated in 2003 under rulemaking Congress explicitly authorized when it

passed the Do Not Call Implementation Act of 2003, 15 U.S.C. § 6153 ("2003 Act"), which

related to *consumer privacy*, the mainstay of Section 227(c).

Pursuant to that mandate, the FCC began a rulemaking proceeding that expressly sought

comment on whether "network technologies have been developed over the last decade," and

which ultimately resulted in an order promulgating the implementation and incorporation of the instant caller ID legislative rule, as well as Do Not Call Registry rules. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14118. As the FCC explained in that 2003 TCPA Order rulemaking proceeding, "The new rules will also require all companies conducting telemarketing to transmit caller identification (caller ID) information, when available, and prohibits them from blocking such information." *Id.* at 14017. "[T]he 2003 FCC [TCPA O]rder applies to section 227(c). . . . Therefore, Radvansky may bring a case." *Radvansky v. Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314, 1321, 1321 n.3, n.4 (N.D. Ga. 2024).

And contrary to Defendant's statement that the "FCC never identified § 227(c) as the authorizing subsection for 47 C.F.R. § 64.1601(e)," Defendant is simply wrong. When it promulgated Section 1601(e), in the same document it used to create the Do Not Call regulations, the FCC *explicitly tied* the Caller ID requirements at issue here to the TCPA's private right of action in Section 227(c), reasoning that "Caller ID requirements will improve the ability of consumers *to identify and enforce* do-not-call rights against telemarketers. . . . Consumers are frustrated by the failure of many telemarketers to transmit caller ID information, which, under certain circumstances, *makes it difficult for consumers to enforce* the TCPA." *Id.* at 14068, 14118 (emphasis added). The 2003 TCPA Order references Section 227(c) no fewer than *54 times* and only one other section, Section 227(d), only *once*, in the context of a 1997 regulation requiring fax broadcasters to print their information on fax messages. *Id.* at 14134. It references no other section of the TCPA as authority for the regulations it promulgated.

The FCC appropriately concluded that, pursuant to its authority *under Section 227(c) of the TCPA*, "the caller ID requirements at 47 C.F.R. § 64.1601(e) will go into effect on January

29, 2004." *Id.* at 14143. There can be no question that the FCC promulgated the instant regulation under its authority under Section 227(c) of the TCPA, which required the FCC to promulgate privacy regulations.

Section 64.1601(e) serves precisely the consumer protection functions Congress mandated in Section 227(c). It ensures that consumers receiving telemarketing calls know the identity of the telemarketer, enabling them to lodge do not call requests and exercise the very privacy rights § 227(c) was enacted to protect. Indeed, as noted immediately above, Section 64.1601(e) was promulgated in 2003 *in the very same FCC order* that adopted the National Do Not Call Registry rules in § 64.1200(c), rules that EverLaw concedes are enforceable through § 227(c)(5). It would be incongruous to hold that the same FCC order created a private right of action for the DNC requirements but somehow failed to create one for the caller ID requirements adopted in the same rulemaking under the same statutory authority. *See Weingrad*, 2026 WL 496609, at *5–6. Both are consumer privacy regulations. Both were promulgated under § 227(c). Both are enforceable under § 227(c)(5).

Executive agencies do not create regulations absent an explicit authorization from Congress. *Bowen*, 488 U.S. at 204. Defendant's implicit assumption that the FCC somehow created § 64.1601(e) without a statutory home is contrary to *Bowen* and its progeny, including *Alexander v. Sandoval*. ("[W]hen a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable. But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.") 532 U.S. 275, 291 (2001). Given that courts presume that agencies act lawfully and given that the

instant regulation must rest on *some* subsection of § 227, once subsections (b), (d), (e), and (i) are eliminated, only (c) is left standing. And § 227(c) explicitly permits not only the FCC to implement "regulations to implement methods and procedures for protecting the privacy rights described in such paragraph," 47 U.S.C. § 227(c)(2), but also explicitly imparted consumers with a private right of action to enforce the "regulations prescribed under this subsection," 47 U.S.C. § 227(c)(5), precisely as envisaged by the Supreme Court in *Alexander* when it speaks of a "general authorization for private enforcement of regulations" that Congress explicitly authorized. That is the opposite of absentmindedly creating a cause of action.

EverLaw invokes the same faulty *Worsham* line of reasoning that the *Selectquote* Court addressed at length. And, as indicated above, since *Selectquote*, no court has adopted the same faulty line of reasoning adopted by pre-*Selectquote* courts. All those courts impermissibly severed the subject regulation, promulgated under § 227(c), from the § 227(c)(5) private right of action Congress provided. That position cannot be reconciled with *Alexander*, *Bowen*, and the litany of other courts to have addressed the issue post-*Selectquote*. If the regulation was promulgated under § 227(c), as it must have been, then it is enforceable through § 227(c)(5). The tide has shifted definitively. This Court should continue to adopt the precedent set by the Eastern District of Pennsylvania and every Court to have considered the issue from that point.

**B.    Plaintiff's treble damages claims also survive because Plaintiff has pled that the TCPA was violated wilfully.**

Defendant also moves to dismiss the Plaintiff's claims for treble damages under the TCPA. Specifically, Defendant argues Plaintiff has not pled facts that would warrant a finding of "knowingness" or "wilfulness" such as to justify the imposition of treble damages under the TCPA. But treble damages are justified here. Of relevance here, the TCPA's damages clause, 47 U.S.C. § 227(c)(5), permits the Court to award up to treble damages "[i]f the court finds that the

9

defendant willfully or knowingly violated the regulations prescribed under this subsection." The Plaintiff has pled facts in his complaint that give rise to the plausible inference that Defendant knowingly called a number on the Registry. Accordingly, the Defendant's motion on this point must fail.

Ordinarily, a listener assumes that an adverb that modifies a transitive verb "tells the listener how the subject performed the entire action." *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009). For example, "if a bank official says, 'Smith knowingly transferred the funds to his brother's account,' " listeners "would normally understand the bank official's statement as telling [them] that Smith knew the account was his brother's." *Id.* So too in the context of section 227(c)(5) and section 64.1200(c)(2). There, a listener would ordinarily understand, for example, that knowingly "initiated any telephone solicitation" means that a person knew that he initiated a telephone solicitation and knew that he was calling a residential telephone subscriber who had registered his or her telephone number on the national do not call registry. *See Owens v. Starion Energy, Inc.*, No. 3:16-CV-01912 (VAB), 2017 WL 2838075, at *7 (D. Conn. June 30, 2017).

*Flores-Figueroa'*s reasoning proves illustrative in this context when interpreting the violations here, for placing calls with both legally deficient Caller ID information and to a number on the Do Not Call registry. It would be difficult to conceive of a situation where a caller does *not* "know" that they were sending a call with inaccurate caller ID information, let alone to a number on the Registry. A listener uttering the phrase, "knowingly made a call using an inaccurate caller ID," *cf.* 47 C.F.R. §1601(e), would ordinarily understand that the person knew that he made a call and knew that he was doing so using a caller ID that did not transmit its name. One only need to call another phone number to have notice of that fact. *See id.*

10

And, apropos of *Marks*, which Defendant itself cites, the Plaintiff has pled that the Defendant did not have consent to contact the Plaintiff and had knowledge of this fact. *Marks v. Unique Lifestyle Vacations, LLC*, No. 20-4915-KSM, 2024 WL 1051974, at *5 (E.D. Pa. Mar. 11, 2024). Given that the Plaintiff has pled as much, and such pleading must be treated as true for the purposes of the Motion to Dismiss, Plaintiff has stated a claim and the treble damages claims should not be dismissed at the pleadings stage. Even under *Marks*, this case involves additional allegations *Marks* did not, including Caller ID claims and the lack of consent. Nothing more is required of the Plaintiff at the pleading stage. *See, e.g.*, *Pacleb v. Cops Monitoring*, No. 2:14-CV-01366-CAS (JCx), 2014 WL 3101426, at *1, 4 (C.D. Cal. July 7, 2014) (holding wrong number automated calls was sufficient to state a claim for treble damages)*; Keifer v. HOSOPO Corp.*, No. 18-cv-1353-CAB, 2018 WL 5295011, at *5 (S.D. Cal. Oct. 25, 2018) (finding an allegation that plaintiff never provided his information to the defendant sufficient to state a claim for treble damages); *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2015 WL 431148, at *4 (N.D. Cal. Feb. 2, 2015) (finding allegations that "defendant, using an ADTS [sic], sent text message to plaintiff in knowing and/or willful violation of the TCPA" sufficient to state a claim for treble damages).

EverLaw's central treble damages argument is that the calls were inadvertent because they were intended for "Star," not Plaintiff. But the second call on January 9, 2026, came three weeks after the first call asked for "Star," meaning whoever placed the call was on actual notice that the number was not connected to "Star," yet called back anyway. That directly supports a plausible inference of willful conduct, notwithstanding the fact that Defendant should have known it was transmitting both inaccurate caller ID to a number on the Do Not Call Registry without consent. This is not to mention that Defendant chose its telephone carrier, chose to leave

the default CNAM setting in place, and made an affirmative decision not to identify itself. Onvoy expressly offers customers the ability to set CNAM, and Defendant chose not to. This is a knowing omission on which the Plaintiff can obtain treble damages. And, because § 64.1601(e) was promulgated under § 227(c), it is enforceable through § 227(c)(5)'s full remedial scheme, including treble damages for willful violations.

To accept Defendant's motion and dismiss the Plaintiff's demand for treble damages at the pleadings stage would necessarily require the Court to make a holding that the Plaintiff has not plausibly alleged that the Defendant *knew* that it was transmitting inaccurate caller ID or calling numbers on the Do Not Call list without consent. But this inference is eminently logical from the pleadings, and the Defendant's unproven counterproposition is illogical and violates the 12(b)(6) standard. Those contrary inferences are rendered all the more unlikely when one considers the Plaintiff's pleading, which is entitled to a presumption of truthfulness. Because the Plaintiff has pled facts which show that the Defendant acted "knowingly," and because one can hardly conceive of a situation where an entity like the Defendant does not send such calls "unknowingly," this portion of the motion also ought to be denied. Accordingly, this Court should permit the Plaintiff's request for treble damages to proceed at this stage, as the Plaintiff's allegations plainly establish knowing and willful conduct on the part of the Defendant.

RESPECTFULLY SUBMITTED AND DATED this 8th day of May, 2026.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> (*Pro Hac Vice*)
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com

12

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2026, a copy of the foregoing was served via CM/ECF, which will electronically serve all counsel of record who have appeared.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com
Lead Attorney for Plaintiff and the Proposed Class

13